CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA.
FILED
FEB 0 3 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| WILLIE L. MILLER, | ) | CASE NO. 4:05CV00037 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| JO ANNE B. BARNHART, | ) | By: B. Waugh Crigler |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's April 7, 2003 application for a period of disability and disability insurance benefits under the Social Security Act (Act), as amended, 42 U.S.C.§§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render a report to the presiding District Judge setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will recommend that an order enter REVERSING the Commissioner's final decision denying benefits, but REMANDING the case for further proceedings beginning at the third level of the sequential evaluation.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff, who was 49 years old at the time with a tenth grade education and with past relevant work as a cook, fork lift operator, packer, unloader and loom cleaner was insured for disability benefits from October 12, 2002, the alleged

date of disability onset, through the date of his decision. (R. 12, 20.)[1] The Law Judge also found that plaintiff suffered diabetes, sleep apnea, asthma, hypertension, gout, a back impairment, borderline intellect and a depressive condition which were severe impairments, though not severe enough to meet or equal any listed impairment. (R. 20.) In so finding, the Law Judge specifically addressed evidence in the record that the WAIS-III test performed by Blanche Williams Ph.D. revealed that plaintiff obtained a verbal IQ of 64, a performance IQ of 67 and a full scale IQ of 62. (R. 16-20, 248-255.) Though crediting Dr. Williams' evidence to the extent that the Law Judge found that plaintiff suffered a borderline intellectual function, the Law Judge declined to "accept the claimant's performance on the WAIS-II . . . as a valid indication of the claimant's life long intellectual functioning, because it is inconsistent with his work history and because the claimant's performance, on testing by Dr. Williams, may have been depressed by his depressive symptoms and by his pain symptoms." (R. 19.)[2]

Nevertheless, and without making a specific finding concerning plaintiff's inability to perform his past relevant work, which work a vocational expert (VE) identified as ranging between unskilled light work and semi-skilled medium work, the Law Judge found plaintiff was limited "to simple unskilled sedentary work" which he believed would "accommodate[] the claimant's impairments." (*Id.*) Moreover, the Law Judge determined that plaintiff's "primary impairment" was his obesity (5'8" and 310-315 pounds), and that his pain, borderline intellect and mild reactive depression "should not prevent the claimant from performing simple unskilled

---

[1] The undersigned notes that there were two hearings. The first took place under circumstances where plaintiff's counsel could not attend. (R. 256-272.) The second was attended by counsel who was afforded an opportunity to listen to the tape of the first proceedings and had "no objections" to it. (R. 274.)

[2] The Law Judge specifically found that plaintiff was "not retarded." (R. 18.)

2

sedentary work on a sustained and ongoing basis." (R. 19, 261.) By application of the Medical-Vocational Guidelines ("grids") as a "framework for the decision" and by reference to some responses to a hypothetical question which required the VE to assume plaintiff "could do sedentary work," the Law Judge found jobs available to the plaintiff. (R. 19-20, 281.) Thus, the Law Judge determined that plaintiff was not disabled under the Act.

The Appeals Council determined there was no basis in the record to review or change the Law Judge's decision, and it denied review. (R. 3-5.) Thus, the Council adopted the Law Judge's decision as a final decision of the Commissioner, and this action ensued.

Borderline intellectual functioning meets the requirements of the Commissioner's Listings where any of the claimant's valid IQ scores fall between 60 and 70, and where the claimant has demonstrated that he/she suffers "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. §§ 404.1525, Appendix 1, § 12.05C. Here, the Law Judge declined to "accept the claimant's performance on the WAIS-II as a valid indication" of his intellectual functioning, "because it is inconsistent with his work history and because the claimant's performance . . . . *may have been* depressed by his depressive symptoms and by his pain symptoms." (R. 19 (emphasis added).) While the undersigned acknowledges that valid IQ scores are required under the Commissioner's Listings, the Law Judge's determination of non-validity is more than curious; it appears erroneous.

First of all, there is not a single hint in the acceptable medical evidence that the plaintiff's WAIS-III IQ scores were invalid. Blanche Williams, Ph.D. the licensed clinical psychologist who performed the test, observed that there were no "significant differences among his IQs or among his subscale scores." (R. 252.) While she recognized that plaintiff's depression impacts his ability to perform simple tasks or attend work without interruption, there is no indication that

3

this depression impacted the test's validity. (R. 253.) In fact, Williams believed that plaintiff's "mental retardation, depression, poor attention and concentration for short-term memory" rendered him, in the main, a "poor" candidate for making occupational adjustments and only a "fair" candidate for making performance adjustments in the workplace. (R. 254-55.)

In addition, the school records plaintiff submitted show that, while he had been promoted to the 7th grade by 1971, Metropolitan Readiness testing revealed he was a "poor risk" with only a 4% grade ranking. (R. 117, see also R. 113.) Plaintiff underwent Lorge-Thorndike IQ testing in 1966 which revealed a Verbal IQ score of 79, a Non-Verbal score of 69 and a Total IQ score of 71. As the Law Judge acknowledged, however, this type of testing is not recognized in the preface to § 12.00 of the Listings. 20 C.F.R. §§404.1525 and 416.925, Appendix 1, § 12.00D.6.a-e.[3]

Moreover, there is not a single state agency consultative medical source which challenges Dr. Williams' findings or the validity of her WAIS-III test, and the opinions cited by the Law Judge are mere DDS transmittals or "Reconsideration" notices which preceded Dr. Williams' examination and contain no reference to plaintiff's intellect. (R. 13, 23-24, 30-32.)[4] Thus, it appears that the Law Judge based his entire decision to discredit plaintiff's otherwise facially valid IQ scores on plaintiff's work history and upon the fact that plaintiff's obesity was the root

---

[3]The record also leaves considerable room to question the grade level actually achieved by the plaintiff. While he indicated in his application for benefits that he achieved the 10th grade, his school records only go through the 7th grade.

[4]Nor can the reports from Juan Cuebas, M.D., plaintiff's treating neurologist, be read to countervail the results of Dr. William's IQ testing. (See, e.g. R. 181.) His "Mental Status" examinations were designed to test for neurological deficits, not psychological or mental deficits.

4

of his problems, which the Law Judge did not believe would interfere with sedentary work. (R. 19.)

The undersigned has not been able to find any provision of the Commissioner's regulations which permit the administration to challenge the validity of WAIS scores on the basis of a claimant's work history, especially where there is no medical source evidence suggesting invalidity. In fact, the sequential evaluation appears to counsel against such an approach. 20 C.F.R. §§ 404.1520(5) and 416.920(5). Thus, the questions are whether the claimant is working, whether the impairment claimed has lasted longer than 12 continuous months and whether the impairment meets or equals the requirements of a listed impairment. Thereupon, the inquiry turns to the requirements of the Listings, which in this case provide that where a claimant's WAIS test scores range between 60 and 70, and where the claimant suffers any physical or mental impairment imposing "additional and significant work-related limitations," that person *is* disabled. 20 C.F.R. §§ 404.1525 and 416.925, Appendix 1, § 12.05C.

That the instant plaintiff suffers such additional work-related limitations is revealed by the Law Judge's own findings which provide that plaintiff suffers severe diabetes, sleep apnea, asthma, hypertension, gout, a back impairment and depression. (R. 20.) Despite the Law Judge's apparent disdain for plaintiff's obesity, which incidently has been removed from § 9.00 of the Listings, it does not appear as though he analyzed plaintiff's obesity in conformity with the Commissioner's own rulings. Social Security Ruling 02-01p (2002). This ruling acknowledges that obesity is an impairment and establishes an assessment framework for determining its severity in any given case, which assessment the instant Law Judge only partially satisfied. (R. 19.) Moreover, while obesity has been removed from the Commissioner's Listings, it can

combine with other impairments to produce significant vocational effects which the instant Law Judge did not assess in this case.

Finally, the undersigned does not believe the Law Judge can justify his determination to reject Dr. Williams' IQ test scores on the basis that plaintiff's depression may have skewed the results. It is a medical question, and there is no substantial medical source evidence in this record from which that conclusion reasonably may be drawn. In other words, this portion of the Law Judge's justification is crafted out of whole cloth as the result of exercising an expertise he does not have.

It also is well recognized that where the claimant has proved an inability to perform his/her past relevant work, the burden shifts to the Commissioner to produce evidence that alternate gainful activity is available in significant numbers to the claimant. 20 C.F.R. §§ 404.1520 and 416.920. Should non-exertional limitations be present, the Commissioner is not permitted to discharge that burden by relying on the grids, but instead, she must present vocational evidence through the testimony of a VE. 20 C.F.R. §§ 404,1569 and 416.969, Appendix II, § 200.00(e). For vocational evidence to be relevant, the Law Judge must properly set out in hypothetical questions to the VE all of plaintiff's impairments and their effects which are shown by the substantial evidence. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Otherwise, the Commissioner will not be seen as having discharged her sequential burden.

Here, the Law Judge inquired of the VE concerning the nature of plaintiff's past relevant work and the availability of alternate gainful activity under hypothetical facts which assumed plaintiff could perform sedentary work limited only to his not being around "any real dangerous machinery, *that kind of thing?*" (R. 281-82.)(emphasis added.) The undersigned does not believe the Law Judge's question was complete, and his use of the term "that sort of thing" does not

sufficiently substitute for the requirement, under *Walker v. Bowen*, that all limitations shown by the substantial evidence be presented to the VE. Interestingly, when the plaintiff's attorney asked the VE to consider additional evidence which presumably was derived from Dr. Williams' functional assessment but which the record fails to disclose because his question is reported as "INAUDIBLE," the VE opined, "He could probably do the job . . . [mentioned in response to the Law Judge's questions] . . . . He probably would not be the world's best on that form. He may have difficulty maintaining employment." (R. 282.) This evidence, at best, is equivocal and raises serious concerns in the undersigned's mind about whether there has been an adequate adjudication of the claim at the final sequential level, even if it was right for the Law Judge to have found plaintiff did not suffer a listed impairment under § 12.05C.

The undersigned is of the view that the Commissioner's final decision is not supported by substantial evidence, but that there is good cause to remand the case for further proceedings. In particular, the Commissioner should be required to reassess whether plaintiff is disabled under § 12.05C, and if she is unable to grant benefits at that level of the inquiry on the current record, she should be directed to recommit the case to a Law Judge to clarify his findings at the final three levels of the sequential evaluation in a manner which comports with her own regulations. The findings then more properly could be reviewed by the court should the Commissioner again deny benefits and plaintiff challenges that decision. It is so RECOMMENDED.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned

7

not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C.A. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
United States Magistrate Judge

DATE: 2-3-06