IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| WILLIE MILLER, | ) |
|     Plaintiff, | ) Case No. 4:05-CV-00037 |
| v. | ) **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
|     Defendant. | ) By: Jackson L. Kiser |
| | )     Senior United States District Judge |

Before me is the *Report and Recommendation* of the United States Magistrate Judge. The Magistrate Judge recommends reversing the Commissioner's final decision which denied the Plaintiff's claim for benefits and recommends remanding this case for further proceedings beginning at the third level of the sequential evaluation. The Commissioner filed *Objections to the Magistrate's Report and Recommendation*. I reviewed the Magistrate Judge's *Report and Recommendation*, the Commissioner's *Objections*, and relevant portions of the record. The matter is now ripe for decision.

For the reasons stated below, I will **reject** the Magistrate Judge's *Report and Recommendation* and will **sustain** the Commissioner's *Objections*. Therefore, the Commissioner's final decision denying the Plaintiff's claim for benefits will be **affirmed** and judgment will be **granted** for the Commissioner. This case will be **dismissed** from the docket of this Court.

**I.    STATEMENT OF FACTS**

Willie L. Miller ("Plaintiff"), who was forty-nine (49) years old at the time he applied for benefits, has a tenth grade education and past relevant work as a fork lift operator, packer,

1

unloader, and loom cleaner.  The Plaintiff was insured for disability benefits from October 12, 2002, the alleged date of disability onset, through the date of his hearing before the Administrative Law Judge ("ALJ") in this case.

The ALJ found that the Plaintiff suffered diabetes, sleep apnea, asthma, hypertension, gout, a back impairment, borderline intellect, and a depressive condition which caused impairments but did not equal or exceed listed impairments.  The Plaintiff took a WAIS-III test on which he scored a verbal IQ of 64, a performance IQ of 67, and a full scale IQ of 62.

## II.     STANDARD OF REVIEW

Congress limits judicial review of decisions by the Social Security Commissioner.  This Court is required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *See also, Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996).  "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner of Social Security is charged with evaluating the medical evidence, assessing symptoms, signs, and findings to determine the functional capacity of the claimant.  20 C.F.R. §§ 404.1527-404.1545; *Hays v. Sullivan*, 907 F.2d 1453 (1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984).  The regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence.  20 C.F.R. §§ 404.1527 and

2

416.927. If the Law Judge's resolution of the conflicts in the evidence is supported by substantial evidence, then this Court must affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

It is well established that disability determinations are governed by the provisions of 20 C.F.R. § 404.1520 (2003). Under the five-step evaluation procedure, the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work; and (5) if so, whether other work exists in significant numbers in the national economy that accommodate his residual functional capacity and vocational factors. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). The burden of proof remains with the claimant through the fourth step; however, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant can perform. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

## III.    DISCUSSION

The ALJ did find that the Plaintiff suffers a borderline intellectual function based on his performance on the IQ tests, but he declined to "accept the claimant's performance on the WAIS-II . . . as a valid indication of the claimant's life long intellectual functioning, because it is inconsistent with his work history and because the claimant's performance, on testing by Dr. Williams, may have been depressed by his depressive symptoms and by his pain symptoms." Without making a specific finding about the plaintiff's inability to perform his past relevant

3

work, which a vocational expert identified as ranging between unskilled light work and semi-skilled medium work, the ALJ found that the Plaintiff was limited to "unskilled sedentary work" which he believed would "accomodate[] the claimant's impairments." Furthermore, the ALJ determined that the Plaintiff's "primary impairment" was his obesity (5'8" and 310 - 315 pounds), and that his pain, borderline intellect, and mild reactive depression "should not prevent the claimant from performing simple unskilled sedentary work on a sustained and ongoing basis."

Borderline intellectual functioning meets the requirements of the Commissioner's Listings where any of the claimant's valid IQ scores fall between 60 and 70, and where the claimant has demonstrated that he/she suffers "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. §§ 404.1525, Appendix 1, § 1205.c. In this regard, the ALJ declined to "accept the claimant's performance on the WAIS-II as a valid indication" of his intellectual functioning "because it is inconsistent with his work history and because the claimant's performance . . . may have been depressed by his depressive symptoms and by his pain symptoms."

In his *Report*, the Magistrate Judge states that the ALJ appears to have "based his entire decision to discredit the plaintiff's otherwise facially valid IQ scores on the plaintiff's work history and upon the fact that plaintiff's obesity was the root of his problems" which the ALJ did not believe would interfere with sedentary work. The Magistrate Judge opines that the ALJ did not properly assess the severity of the Plaintiff's obesity. The Magistrate Judge also opines that the ALJ was not justified in his decision to reject the IQ test scores on the basis that the Plaintiff's depression may have skewed the results. The Magistrate Judge states that the

4

evidence on which the ALJ relied, to find that the Plaintiff could perform sedentary work, was "equivocal and raises serious concerns . . . about whether there has been an adequate adjudication of the claim at the final sequential level, even if it was right for the Law Judge to have found plaintiff did not suffer a listed impairment under § 12.05C." The Magistrate Judge concludes that:

> . . . the Commissioner's final decision is not supported by substantial evidence, but that there is good cause to remand the case for further proceedings. In particular, the Commissioner should be required to reassess whether the plaintiff is disabled under §12.05C, and if she is unable to grant benefits at that level of the inquiry on the current record, she should be directed to recommit the case to a Law Judge to clarify his findings at the final three levels of the sequential evaluation in a manner which comports with her own regulations.

The Commissioner objects to the Magistrate Judge's *Report* by arguing that "substantial evidence supported the Commissioner's decision that Plaintiff retained the functional capacity to perform the simple, unskilled sedentary jobs identified by the vocational expert, and thus, was not under a "disability" as defined by the Act." The Commissioner points out that it is well settled that for a claimant to meet his burden of proof, the evidence in the record must show not only a diagnosed mental impairment, but also associated functional limitations that prevent him from performing any substantial gainful activity. *See*, 20 C.F.R. §404.1520 (2005); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

In her *Objections*, the Commissioner points to the ALJ's findings that the Plaintiff's life achievements and work history were inconsistent with a per se disabling intellectual functioning capacity: "the pattern in the claimant's reported earnings indicate[s] that he had fairly rapid and significant increases in earnings with his different employers" (*Decision 18*), and the Plaintiff was able to supervise and adjust to changing work environments (*Decision 18*). The

Commissioner argues that even if the Plaintiff's IQ scores satisfy the criteria of Listing 12.05C, the Plaintiff's strong work history, along with the Plaintiff's school records and all of the objective evidence, illustrates that the Plaintiff had no significant deficits in adaptive functioning.

The Commissioner argues that although the ALJ found that the Plaintiff has a mental impairment that was severe at step two of the sequential evaluation, such evidence does not mandate a finding of per se disability at step three. The Commissioner explains that an individual who has no significant deficits in adaptive functioning, despite low IQ scores, is not functionally limited by mental retardation and thus is not disabled. The Commissioner argues that if the Plaintiff were disabled by limitations from mental retardation, his work history and life circumstances would have shown as much. The Commissioner concludes that the objective evidence in the record supports the ALJ's finding that the Plaintiff could make adjustments to the unskilled work activity identified by the vocational expert.

I agree with the Commissioner. Substantial evidence exists to support the ALJ's holding that the Plaintiff's IQ scores deemed him severely impaired at step two of the sequential evaluation. Substantial evidence also exists to support the ALJ's holding that the Plaintiff's impairment is not disabling at step three of the sequential evaluation.

The law is clear that a Plaintiff's mental impairment is insufficient by itself to deem the Plaintiff disabled. Instead, as the Magistrate Judge explains in his *Report*, "the inquiry turns on the requirements of the Listings, which in this case provide that where a claimant's WAIS test scores range between 60 and 70, and where the claimant suffers any physical or mental impairment imposing 'additional and significant work-related limitations,' that person is

disabled." 20 C.F.R. §§ 404.1525 and 416.925, Appendix 1, § 12.05C. In this case, the ALJ deemed the Plaintiff's IQ scores a less than credible measure of his mental status. Even if the ALJ was wrong to discount the IQ scores, which did range between 60 and 70, the ALJ in essence found that the Plaintiff had no physical or mental impairment imposing additional and significant work-related limitations. The Plaintiff had a low enough IQ score to be deemed disabled, but he did not have the necessary additional impairments.

As the ALJ held, in spite of the Plaintiff's low IQ scores, diabetes, sleep apnea, asthma, hypertension, gout, back impairment, and depression, the Plaintiff could still perform simple unskilled sedentary jobs. The record contains substantial evidence that the forty-nine year old Plaintiff's life experiences are inconsistent with a per se disabling intellectual functional capacity. The Plaintiff's *Work History Report* ("*Work History*") shows that the Plaintiff has past relevant work as a loom cleaner, packer, fork lift operator, unloader, and coordinator. (*Record, Page 90*). The *Work History* shows that the Plaintiff "clean[ed] looms all day and threaded looms" for forty (40) hours a week when employed as a loom cleaner at Burlington Mills. (*Record, Page 91*) The *Work History* shows that the Plaintiff "pack[ed] and stack[ed] boards all day" and "lifted cedar chest tops, a couple of feet, all day long" for forty (40) hours a week when employed as a packer at Lane Furniture Company. (*Record, Page 92*). The *Work History* shows that the Plaintiff "ran [the] shipping department" and lifted "boxes of merchandise a few feet, most of the day" for twelve hours a day, three days a week when employed as a coordinator and unloader at Dollar General. (*Record, Page 94*). The *Work History* also shows that the Plaintiff supervised eighteen (18) people for eight hours a day while working at Dollar General. (*Id.*)

Substantial evidence exists in the record to justify the ALJ's holding that the Plaintiff was

7

not disabled at step three of the sequential evaluation.  Substantial evidence exists in the record to justify the ALJ's holding that the Plaintiff retained a functional capacity to perform simple unskilled sedentary jobs, and was therefore not under a "disability" as defined by the Act. Therefore, I will affirm the ALJ's decision to deny benefits to the Plaintiff in this case.

## IV. CONCLUSION

For the reasons stated above, I will **reject** the Magistrate Judge's *Report and Recommendation* and will **sustain** the Commissioner's *Objections.*  Therefore, the Commissioner's final decision denying the Plaintiff's claim for benefits will be **affirmed** and judgment will be **granted** for the Commissioner.  This case will be **dismissed** from the docket of this Court.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 19th day of July, 2006.

s/Jackson L. Kiser
Senior United States District Judge